IRVING, J.,
for the Court.
¶ 1. After his conviction and sentencing for possession of cocaine with intent to distribute, Steven Haynes filed a pro se motion for post-conviction relief, which the *122 Pike County Circuit Court denied. Aggrieved, Haynes appeals and asserts that the court erred in not altering Haynes’ sentence or allowing Haynes to withdraw his guilty plea, and that the court erred in refusing to hold an evidentiary hearing on Haynes’ motion.
¶ 2. Finding error, we reverse and remand.
FACTS
¶ 3. On August 16, 2004, Haynes withdrew his previous plea of not guilty and entered a plea of guilty, pursuant to a plea agreement negotiated by his attorney, Thomas Welch, Jr., with a Pike County prosecutor. This agreement, as read into the record by the prosecutor at Haynes’ guilty plea hearing, was that “the State recommends 25 years, 20 suspended with 5 years to serve and 5 years probation. This count to run concurrently with the defendant’s current sentence, or the remainder of the defendant’s current sentence .... ” The court accepted this recommendation and sentenced Haynes to twenty-five years, with five years to serve, the five years to run concurrently to a prior sentence that Haynes was serving at the time of the hearing.
¶ 4. After his incarceration on this charge, Haynes requested a copy of his time sheet and discovered that he would not be released until 2009. Haynes believed, allegedly because of statements made to him by Welch, that he would be released in 2006, when he finished serving time on his prior conviction. Haynes contacted Welch, who sent him the following letter which we quote verbatim:
I have spoken with your father twice about this. When last he and I spoke, the MDOC website had you being released in 2006, like it was to be originally. Apparently, through your asking questions or your father or someone, you made the folks mad and [they] have since changed your release date to 2009. Before you go nuts, calm down. Our agreement, the one that you pled guilty to, had the five years running concurrently with what you were serving. I will have this fixed with MDOC. They don’t like being shown up, as you probably know, so they’ll balk but it’ll get done. If not, I will file a Post Conviction Release [sic] on the matter and have it straightened out that way. I have run into this situation before and I have had to get it fixed with PCR and I will do so in your case, if needs be.
It will be taken care of. Quit listening to the folks in there. They got you an extra three years from MDOC that will have to be taken care of.
(emphasis added). After receiving this letter, Haynes heard nothing further from Welch, and Haynes eventually filed the current post-conviction motion pro se.
¶ 5. In his motion for post-conviction relief, Haynes asserted that his sentence was running consecutively instead of concurrently. He also pointed out that his time sheet directly contradicted the information told to him by his attorney. Haynes attached the letter sent to him by Welch. The court denied Haynes’ motion for post-conviction relief without mentioning or addressing the letter from Welch.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Correction of Order/Withdraival of Plea

¶ 6. We do not address the merits of this issue here, because we find error in the court’s failure to grant an evidentiary hearing.

*123
2. Evidential Hearing

¶ 7. The State, quoting McNabb v. State, 915 So.2d 478, 480(¶ 5) (Miss.Ct. App.2005), contends that Haynes is not entitled to an evidentiary hearing because “a circuit court may dismiss a petition for post-conviction relief without an evidentia-ry hearing when it plainly appears from the petition, the court’s files, and prior proceedings that the petitioner is not entitled to relief.” While the State accurately quotes the general law on evidentiary hearings, Mississippi law entitles Haynes to an evidentiary hearing in this instance.
¶ 8. The Mississippi Supreme Court has specifically held: “failure to mention something concerning parole eligibility may be no problem, but erroneous information concerning parole and sentencing at least entitles the petitioner to an eviden-tiary hearing on whether he relied on the erroneous information.” Fairley v. State, 834 So.2d 704, 707(¶ 8) (Miss.2003). Here, the record reflects a strong likelihood that Haynes was given erroneous information concerning the effect or meaning of a concurrent sentence. The letter from Welch indicates that he had told Haynes that Haynes’ present sentence would terminate upon completion of Haynes’ prior sentence. If Welch had not told Haynes this, it is unclear to this Court why Welch would tell Haynes that “the MDOC website had you being released in 2006, like it ivas to be originally ” and “[tjhey got you an extra three years from MDOC.” Welch’s statements in his letter to Haynes indicate that Haynes was given erroneous information concerning how his concurrent sentences would run and when each would terminate. As such, Haynes is entitled to an eviden-tiary hearing to determine whether he relied on the erroneous information from Welch.
¶ 9. The dissent characterizes the issue as a misunderstanding or an “appearance of a misunderstanding” between Haynes and his lawyer concerning the correct interpretation of a concurrent sentence and accuses the majority of concluding that this misunderstanding “somehow vitiates the voluntariness of [Haynes’] plea.” It appears that the dissent misreads Haynes’ PCR motion, his brief, and our holding. First, the record does not indicate that there was any misunderstanding between Haynes and his lawyer, and nothing in our opinion says so. Haynes and his lawyer were of one accord.[1] The italicized portion of Welch’s letter, quoted above, makes this point more eloquently than anything we have said, or could say, in this opinion. Second, we do not hold that Haynes’ guilty plea must be set aside. Rather, we hold that, based on the letter’s content, there is reason to believe that Haynes’ attorney gave Haynes erroneous advice about when Haynes could expect to be released from prison if he pleaded guilty. At the eviden-tiary hearing, it will be up to the trial court to decide if such erroneous advice was given and if so, the effect of that advice on Haynes’ decision to plead guilty.
¶ 10. We are unwilling to trivialize the effect of the erroneous advice that Welch may have given to Haynes and Haynes’ reliance on that advice. In a recent decision by our supreme court, we are reminded of the significant and substantial relationship between the criminal defense lawyer and his client:
*124 The relationship of the accused to his lawyer provides a critical factual context here. As he stands before the bar of justice, the indicted defendant often has few friends. The one person in the world, upon whose judgment and advise, skill and experience, loyalty and integrity that defendant must be able to rely, is his lawyer. This is as it should be. Any rational defendant is going to rely heavily upon his lawyer’s advise as to how he should respond to the trial judge’s questions at the plea hearing. He may also rationally rely on his lawyer’s advice what the outcome of the plea hearing will be. Yet it is the defendant, not the lawyer, who enters the plea. It is the defendant, not the lawyer, who is going to serve the time. It is the defendant, not the lawyer, whose constitutional rights are being waived at the plea hearing. It is the defendant’s plea and accompanying waiver of rights which under established law must be voluntarily and intelligently given, with full appreciation of the consequences to follow.
Hannah v. State, 943 So.2d 20 (¶ 8) (Miss.2006) (quoting Myers v. State, 583 So.2d 174, 178 (Miss.1991)).
¶ 11. The dissent appears to attach some significance to the fact that Haynes did not couch his petition for post-conviction relief or his appeal brief in terms of ineffective assistance of counsel. However, we note that Haynes is proceeding before us pro se, without the benefit of trained legal advice. We also note that while Haynes did not caption any of the issues in his brief as “ineffective assistance of counsel,” he does state the following: “A defendant who pleads guilty to a crime is prejudiced by his counsel’s erroneous advice if he would have insisted on going to trial if he had been correctly informed.” Haynes also states in his brief that “his attorney specifically advised him that a good deal had been reached which required the prosecution to recommend a specific sentence which would end at the completion of his present eight-year sentence.” Haynes also made the latter assertion in his PCR motion.[2]
¶ 12. In Hannah, our supreme court reminded us again that courts should not hold pro se litigants to exacting standards of pleading: “Where, as here, a prisoner is proceeding pro se, we take that fact into account and, in our discretion, credit not so well pleaded [sic] allegations, so that a prisoner’s meritorious complaint may not be lost because inartfully drafted.” Id. at n. 1.
¶ 13. Based on the allegations contained in Haynes’ PCR motion, the lower court should have conducted an evidentiary hearing on the voluntariness of Haynes’ guilty plea, regardless of Haynes’ failure to phrase his petition in terms of ineffective assistance of counsel, because Welch’s letter clearly indicates that erroneous advice was given which implicates the volun-tariness of Haynes’ plea. Therefore, the discrepancy between the reality of Haynes’ sentence and the advice given by Welch was apparent from the documents that were given to the lower court to review with Haynes’ petition for relief.
¶ 14. The dissent cannot conceive that Haynes could have truly believed that he was receiving a sentence that would end *125 at the same time as his previous sentence. In the dissent’s view, Haynes could not reasonably believe that he could plead guilty to a felony and receive a sentence with no additional jail time beyond the time for the conviction which Haynes was presently serving. We reiterate that the letter from Welch strongly indicates that Welch told Haynes that he would get out of jail in 2006. In light of such information, Haynes had the choice of either believing and trusting his attorney, or relying on his own inexperience and disbelieving his attorney. Given such a choice, this Court is not prepared to say that it was unreasonable for Haynes to rely on the advice of his attorney. Furthermore, we note that Haynes was not getting a new conviction for free, even if he were to be released in 2006, because the remaining twenty years of his sentence would still be hanging over his head, waiting for reinstatement in the event of wrongdoing. With such a threat, it is not clear to this Court why the dissent believes that Haynes’ faith in his attorney’s advice was “patently ludicrous.” In effect, the dissent would institute a rule that defendants should not trust the advice of their counsel in making guilty pleas, a result that is clearly against public policy and prior Mississippi case law.
¶ 15. Finally, the dissent also contends that allowing Haynes an evidentiary hearing somehow goes against Haynes’ sworn statements in court, because Haynes responded in the negative when the court asked him if anyone had promised him anything in return for his guilty plea. In the context of a guilty plea colloquy, it is apparent to this Court that the something “promised” must be something more than simply the terms of the guilty plea. The dissent’s interpretation of Haynes’ response would require that every defendant in every guilty plea hearing answer affirmatively to the above question, unless the plea is an open plea without a recommendation, because the only answer Haynes could have given to the court was a recitation of the terms of the prosecution’s recommendation in his case. His attorney did not promise him that he would get out in 2006 for any reason other than Welch’s apparent incorrect advice to Haynes regarding the meaning of “concurrent.” The only thing promised to Haynes, as to his understanding, was that his sentences would run concurrently, and it appears that Welch had told him that that meant that he would get out of prison in 2006. Clearly, the above question, commonly asked during plea hearings, cannot mean that a defendant must answer, “Yes, I am receiving a recommendation for a sentence of ‘x’ years, to run concurrently to.... ” The question, in context, clearly implies a promise of something more to a defendant to facilitate a guilty plea.
¶ 16. In conclusion, we again reiterate that our holding is not that Haynes is entitled to withdraw his plea. We hold only that he is entitled to an evidentiary hearing. If the court finds that Haynes was indeed given erroneous advice that impacted the voluntariness of his plea, the court should be guided by existing precedent that in order for a guilty plea to be valid the defendant must have entered it knowingly and voluntarily. “In order to meet constitutional standards, a guilty plea must be voluntarily” and intelligently made. Weatherspoon v. State, 736 So.2d 419, 421(¶ 5) (Miss.Ct.App.1999) (citing Henderson v. Morgan, 426 U.S. 637, 653, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)). “A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements.” URCCC 8.04.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY DENYING POST-CONVICTION RE *126 LIEF IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., AND GRIFFIS, J.

. In the PCR motion which Haynes filed in the trial court, he alleged in paragraph 11 that "[u]pon receiving the sentencing order and the attached letter [from Judge Mike Smith] [I] contacted [my] attorney regarding [my] deep concern. On December 27, 2004, [I] received a letter from [my] attorney indicating that he and [I] was [sic] still on the same page and it was the courts that deviated.” The attorney’s letter, which we have already quoted from, was referenced and attached.

. Hannah involved a pro se litigant who delineated four issues in her brief, none of which were captioned "ineffective assistance of counsel.” However, the supreme court noted that Hannah had raised the ineffective assistance of counsel issue in the summary of her argument and held that this Court should have considered the ineffective assistance of counsel argument. Haynes raises his ineffective assistance of counsel claim in much the same way as did Hannah.